UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEITH DURR,

              Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS HEALTHCARE
SERVICES et al.,

              Defendants.
_____/

Case No. 1:25-cv-1563

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections Healthcare Services, Berghuis, Sutherby, Burt, Steward, Asche, Schiebner, Winger, Corrigan, Batho, Wilkins, Clark, Stain, Marsh, Reinfelder,

Atkinson, Benoit, and Unknown Parties #1, 2, 3, and 4. The Court will also dismiss, for failure to state a claim, Plaintiff's § 1983 claims against remaining Defendant Washington. Plaintiff's ADA and RA claims against Defendant Washington remain in the case.

**Discussion**

## I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at that facility, as well as the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan, and the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. Plaintiff sues MDOC Healthcare Services, as well as MDOC Director Heidi Washington in her official capacity. (Compl., ECF No. 1, PageID.2.) Plaintiff also sues the following LRF personnel in their official capacities: Warden Mary K. Berghuis, Deputy Warden Mark Sutherby, Health Unit Manager Unknown Party #1, and Doctor Unknown Party #2. (*Id.*) Plaintiff sues the following MCF personnel in their official capacities: Wardens Sherry L. Burt and Unknown Schiebner, Deputy Wardens Darrell M. Steward and Jeanine Winger, Health Unit Managers Dr. Dale E. Asche and Unknown Party #4, and Doctor Unknown Party #3. (*Id.*, PageID.2–3.) Finally, Plaintiff sues the following URF personnel in their official capacities: Warden J. Corrigan, Deputy Warden R. Batho, Assistant Deputy Wardens T. Wilkins and J. Clark, Housing Unit Manager B. Stain, West Supervisor E. Marsh, East Supervisor T. Reinfelder, ADA Coordinator/Administrative Assistant K. Atkinson, and Backup ADA Coordinator/Litigation Coordinator K. Benoit. (*Id.*, PageID.3.) However, as set forth below, Plaintiff is seeking declaratory and injunctive relief, as well as damages. (*Id.*, PageID.15.) Accordingly, in light of Plaintiff's request for damages, the Court will

2

generously construe Plaintiff's complaint as bringing claims against Defendants in their respective personal capacities as well.

Plaintiff has attached medical records to his complaint indicating that on December 5, 2006, prior to his incarceration, Plaintiff was admitted to the Henry Ford Hospital after sustaining a gunshot wound to his right distal humerus. (ECF No. 1-3, PageID.37.) Plaintiff "was treated with a spanning external fixator." (*Id.*) Occupational therapy also "made a cock up wrist splint for [Plaintiff's] wrist drop." (*Id.*) Plaintiff was discharged on December 8, 2006. (*Id.*)

Plaintiff had a follow-up appointment on December 21, 2006. (*Id.*, PageID.38.) At that time, Plaintiff complained that the wrist splint was uncomfortable and that he had not been wearing it. (*Id.*) Plaintiff was "not firing his EPL, wrist extensors, or finger extensors." (*Id.*) Plaintiff had "altered sensation radial distribution of his left hand." (*Id.*)

Plaintiff had the external fixator removed and replaced with a long arm cast on June 4, 2007. (*Id.*, PageID.39.) The case was removed on July 12, 2007. (*Id.*) Plaintiff's treating doctor noted that Plaintiff's "right humerus [was] grossly deformed," and that Plaintiff had "atrophy of the right deltoid and a demonstrable ulnar nerve palsy of the right arm." (*Id.*) Plaintiff also displayed "minimal wrist extension and minimal supination, pronation of the right forearm." (*Id.*)

In his complaint, Plaintiff alleges that he arrived at the Charles E. Egeler Reception and Guidance Center (RGC) on November 9, 2012, at which time he was screened by non-party RN Jessica Rutan. (Compl., ECF No. 1, PageID.8.) Plaintiff was screened again by non-party Rachel Udzik on November 29, 2012. (*Id.*) Plaintiff told Udzik about his right arm and damaged radial nerve. (*Id.*) According to Plaintiff, Udzik "failed to place Plaintiff's medical records on file." (*Id.*)

Plaintiff was transferred to LRF in January of 2013. (*Id.*) He continued to "pursue MDOC Healthcare so he could be accommodated and be able to participate in the programs and activities

3

provided by the Rehabilitation Act." (*Id.*) Plaintiff told nurses "numerous times . . . about his disabilities and [the] unknown nurses said the MDOC does not deal with old injuries." (*Id.*) Plaintiff alleges that during this time, there was no ADA coordinator at LRF. (*Id.*, PageID.9.) Moreover, there were no "medical records of his injury or his disfigured right arm." (*Id.*) Plaintiff contends that because of those issues, he "was denied access to a medical splint for his wrist, the legal writer program, light duty for jobs, garden plots, art class, horticulture, bottom bunk detail, [and] all special activities available and other programs that were available." (*Id.*)

Plaintiff was transferred to MCF in October of 2015. (*Id.*) While at MCF, "[f]our times a year, Plaintiff reported his disability and disfigured right arm to MDOC Healthcare." (*Id.*) Each time, healthcare employees "refused to place [P]laintiff's disability in his medical records because they said they were old injuries." (*Id.*) Plaintiff alleges that MCF also had no ADA coordinator to provide accommodations. (*Id.*) Plaintiff did not receive a splint to support his wrist drop. (*Id.*) As a result, "Plaintiff began to experience arthritis in his right hand and in the joints of his right arm." (*Id.*) Plaintiff claims further that he was not provided a bottom bunk detail, and that he "fell down on numerous occasions due to these injuries trying to get on the top bunk." (*Id.*)

Plaintiff goes on to alleges that due to MCF healthcare staff failing to document his disability, Plaintiff "could not be placed in the legal writer program," which denied him access to the courts. (*Id.*, PageID.10.) Plaintiff "lost over $10,000.00 . . . paying unskilled jailhouse lawyers to help him with legal work." (*Id.*) Plaintiff avers that the legal writer program "would have provided for [P]laintiff free assistance from skilled personnel. It further would have provided [P]laintiff with the assistance he needed for lawsuits he filed and his criminal case." (*Id.*)

Plaintiff was transferred to URF on June 10, 2024. (*Id.*) When he arrived, he received a URF Orientation Guidebook, in which Defendants Atkinson and Benoit were listed as the ADA

coordinators. (*Id.*) The guidebook also set forth information regarding the "ADA program under P.D. 04.06.156 and P.D. 06.03.101." (*Id.*)

Plaintiff "continued to request the legal writer program and found out that the MDOC healthcare services must place [his] medical records on file to be process[ed]." (*Id.*) Plaintiff was evaluated by non-party Doctor Maloney on August 13, 2024, and Maloney documented Plaintiff's disability and disfigured right arm. (*Id.*) Plaintiff was accepted into the legal writer program in December of 2024, but he was "unsuccessful in being accepted in the ADA program." (*Id.*) According to Plaintiff, the ADA Coordinators at URF failed to give him "ADA reasonable accommodation request appeal . . . forms." (*Id.*, PageID.11.) Plaintiff also faults the ADA Coordinators for failing to meet with him to "identify reasonable options" to meet his needs, including "prosthetics, medical supplies, devices, medical treatment[,] restrictions on activities[,] and placement in special housing." (*Id.*)

Plaintiff states that it has been difficult to file grievances about the failure to place him in the ADA program because of the lack of documentation regarding his disabilities. (*Id.*) According to Plaintiff, "this is an ongoing issue that remains the same." (*Id.*) Plaintiff does mention using the grievance procedure at URF to attempt to "resolve the problems." (*Id.*)

Based upon the foregoing, Plaintiff indicates that he is raising the following claims for relief: (1) violations of Title II of the ADA; (2) violations of various MDOC policy directives; (3) violations of the Rehabilitation Act; (4) violations of his Fourteenth Amendment equal protection rights; (5) and violations of his First Amendment right to access the courts. (*Id.*, PageID.12–15.) Plaintiff seeks declaratory relief, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.15.) Plaintiff also seeks the following forms of injunctive relief: (1) light duty for all work

assignments; (2) special activities for prisoners with disabilities; (3) a bottom bunk detail; and (4) a splint to support his wrist drop. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.    Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.    Claims Against MDOC Healthcare Services

As set forth above, Plaintiff has named the MDOC Healthcare Services department as a Defendant in this matter. However, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person."). The same is true for the MDOC Healthcare Services department. *See, e.g., Vasquez v. Mich. Dep't of Corr. Bureau of Healthcare Svcs.*, No. 1:24-cv-503, 2024 WL 4297484, at *1 (W.D. Mich. Sept. 26, 2024) ("Defendant . . . MDOC Bureau of Healthcare Services [is] . . . not a 'person' who may be sued under § 1983 for money damages."); *Powell v. State Bureau*, No. 3:22-cv-12496, 2023 WL 3129455, at *3 (E.D. Mich. Apr. 27, 2023) ("Neither . . . the MDOC [nor] its Bureau of Health Care Services ... [are] 'person[s]' subject to suit under § 1983."). And, neither the medical department of any particular prison nor its "medical staff," as a group, are "persons" subject to suit under § 1983. *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 356 (6th Cir. 2006) ("A prison's medical department is not an entity with a corporate or political existence, and may be seen as nothing more than an arm of the TDOC."); *Anderson v. Morgan Cnty. Corr. Complex*, No. 15-6344, 2016 WL 9402910, at *1 (6th Cir. Sept. 21, 2016) ("[T]he "medical staff" at MCCC is not a 'person' subject to suit under § 1983.").

Furthermore, to the extent that Plaintiff named the MDOC Healthcare Services in an attempt to hold all staff members within that department liable for the alleged constitutional and statutory violations, Plaintiff has failed to state a claim for relief. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). "Summary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted).

Accordingly, for the foregoing reasons, the Court will dismiss Plaintiff's claims against MDOC Healthcare Services.

> **2.      Claims Against Defendants Washington, Berghuis, Sutherby, Burt, Steward, Asche, Schiebner, Winger, Corrigan, Batho, Wilkins, Clark, Stain, Marsh, Reinfelder, and Unknown Parties #1, 2, 3, and 4**

Although Plaintiff has named these individuals as Defendants in this matter, he does not mention them within the factual allegations of his complaint or otherwise identify any actions that may be attributed to them.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v.*

*Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Thus, Plaintiff's claims against Defendants Washington, Berghuis, Sutherby, Burt, Steward, Asche, Schiebner, Winger, Corrigan, Batho, Wilkins, Clark, Stain, Marsh, Reinfelder, and Unknown Parties #1, 2, 3, and 4 fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### 3.    First Amendment Access to the Courts Claims

As set forth above, Plaintiff contends that he is asserting First Amendment access to the courts claims.

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants' actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff's access to the courts claims are entirely conclusory. He alleges that because his disability was not documented by healthcare staff, he could not use the legal writer program, which would have provided Plaintiff "with the assistance he needed for lawsuits he filed and his criminal case." (Compl., ECF No. 1, PageID.10.) Plaintiff, however, fails to set forth facts regarding the underlying causes of action and any lost remedies he suffered as a result.[1] In light of the foregoing, the Court will dismiss Plaintiff's First Amendment access to the courts claims.

---

[1] Plaintiff's contention that he is out thousands of dollars that he would still have if free legal writers were available to him is not the type of compensable damage or injury contemplated by *Lewis* or *Christopher*.

10

### 4.    Fourteenth Amendment Equal Protection Claims

Plaintiff also makes conclusory assertions that Defendants violated his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that a fundamental right is implicated in this case or that he is a member of a suspect class; his claims, therefore, are not subject to strict scrutiny.

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "'[T]he hallmark of [a "class-of-one"] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (emphasis removed) (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily.") (emphasis in original). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-

11

of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Andrews v. City of Mentor*, 11 F.4th 462, 473 (6th Cir. 2021) (quoting *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Here, Plaintiff alleges no facts suggesting that he was treated disparately as compared to any similarly situated individuals. Because Plaintiff fails to support his equal protection claims with specific factual allegations, the Court will dismiss his Fourteenth Amendment equal protection claims for failure to state a claim.

### 5.    Claims Regarding Violations of MDOC's Policies

Plaintiff also claims that Defendants violated MDOC policies and procedures regarding medical records, access to the courts, medical details, and treatment of offenders with disabilities.

The Court construes this allegation to raise a claim under § 1983 regarding the violation of MDOC policy.

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertions that Defendants violated the MDOC's policies fail to state a claim under § 1983.

Additionally, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated MDOC policy fails to raise a cognizable federal claim.

Accordingly, Plaintiff's § 1983 claims regarding alleged violations of the MDOC's policies will be dismissed for failure to state a claim.

### B. ADA/Rehabilitation Act Claims

Plaintiff also contends that Defendants violated his rights under Title II of the ADA, as well as the Rehabilitation Act.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the RA has also been found to apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted). The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). As noted above, Plaintiff sues all Defendants in their official capacities. (Compl., ECF No. 1, PageID.2–3.)

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA or the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims.

14

Likewise, the Court assumes, without deciding, that Defendants are not immune from liability in their official capacities under the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1047 (citing cases).

Turning to the merits of Plaintiff's ADA and RA claims, at this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Under the circumstances, the Court will not dismiss Plaintiff's official capacity ADA and RA claims. *Cf. Turner v. Mich. Dep't of Corr.*, No. 22-1562, 2023 WL 2755655 (6th Cir. Apr. 3, 2023). However, Plaintiff's official capacity claims against all Defendants are redundant of one another because each constitutes an identical suit against the MDOC or the State of Michigan for violations of the ADA and RA. *See Foster v. Michigan*, 537 F. App'x 377, 390 (6th Cir. 2014) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). The Court, therefore, will allow Plaintiff's official capacity claims under the ADA and RA to proceed only against Defendant Washington as the highest ranking named official. Accordingly, all ADA and RA claims against the other named Defendants will be dismissed.

## <u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Moreover, having conducted the review required by the PLRA, the Court determines that Defendants Michigan Department of Corrections Healthcare Services, Berghuis, Sutherby, Burt, Steward, Asche, Schiebner, Winger, Corrigan, Batho, Wilkins, Clark, Stain, Marsh, Reinfelder, Atkinson, Benoit, and Unknown Parties #1, 2, 3, and 4 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's § 1983 claims against remaining Defendant Washington. Plaintiff's ADA and RA claims against Defendant Washington remain in the case.

An order consistent with this opinion will be entered.


Dated:   <u>December 9, 2025</u>          <u>/s/ Robert J. Jonker</u>
                                          Robert J. Jonker
                                          United States District Judge

16