UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

KEITH DURR #614438

Plaintiff,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS HEALTHCARE SERVICES, et al.,

Defendants.
______________________________/

Case No. 1:25-cv-01563

Hon. Robert J. Jonker
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I. Introduction**

This Report and Recommendation (R. & R.) addresses Defendants motion to dismiss and for summary judgment. ECF No. 14.

Plaintiff, state prisoner Keith Durr, filed a complaint under 42 U.S.C. § 1983 asserting that his rights were violated at the Chippewa Correctional Facility (URF), the Brooks Correctional Facility (LRF), and the Muskegon Correctional Facility (MCF). ECF No. 1. The remaining claims are against Michigan Department of Corrections Director Heidi Washington for alleged violations of Plaintiff's rights under the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). ECF Nos. 4 and 5.

Durr alleges that prior to his incarceration, he sustained a gunshot wound to his right arm that damaged his radial nerve. ECF No. 4, PageID.68. Plaintiff alleges that he was diagnosed with a "right humerus [was] grossly deformed" and "atrophy

of the right deltoid and a demonstrable ulnar never palsy of the right arm." *Id.* The Court summarized the facts in an opinion dated Dec. 9, 2025:

> In his complaint, Plaintiff alleges that he arrived at the Charles E. Egeler Reception and Guidance Center (RGC) on November 9, 2012, at which time he was screened by non-party RN Jessica Rutan. (Compl., ECF No. 1, PageID.8.) Plaintiff was screened again by non-party Rachel Udzik on November 29, 2012. (*Id.*) Plaintiff told Udzik about his right arm and damaged radial nerve. (*Id.*) According to Plaintiff, Udzik "failed to place Plaintiff's medical records on file." (*Id.*)
>
> Plaintiff was transferred to LRF in January of 2013. (*Id.*) He continued to "pursue MDOC Healthcare so he could be accommodated and be able to participate in the programs and activities provided by the Rehabilitation Act." (*Id.*) Plaintiff told nurses "numerous times . . . about his disabilities and [the] unknown nurses said the MDOC does not deal with old injuries." (*Id.*) Plaintiff alleges that during this time, there was no ADA coordinator at LRF. (*Id.*, PageID.9.) Moreover, there were no "medical records of his injury or his disfigured right arm." (*Id.*) Plaintiff contends that because of those issues, he "was denied access to a medical splint for his wrist, the legal writer program, light duty for jobs, garden plots, art class, horticulture, bottom bunk detail, [and] all special activities available and other programs that were available." (*Id.*)
>
> Plaintiff was transferred to MCF in October of 2015. (*Id.*) While at MCF, "[f]our times a year, Plaintiff reported his disability and disfigured right arm to MDOC Healthcare." (*Id.*) Each time, healthcare employees "refused to place [P]laintiff's disability in his medical records because they said they were old injuries." (*Id.*) Plaintiff alleges that MCF also had no ADA coordinator to provide accommodations. (*Id.*) Plaintiff did not receive a splint to support his wrist drop. (*Id.*) As a result, "Plaintiff began to experience arthritis in his right hand and in the joints of his right arm." (*Id.*) Plaintiff claims further that he was not provided a bottom bunk detail, and that he "fell down on numerous occasions due to these injuries trying to get on the top bunk." (*Id.*)
>
> Plaintiff goes on to alleges that due to MCF healthcare staff failing to document his disability, Plaintiff "could not be placed in the legal writer program," which denied him access to the courts. (*Id.*, PageID.10.) Plaintiff "lost over $10,000.00 . . . paying unskilled jailhouse lawyers to help him with legal work." (*Id.*) Plaintiff avers that the legal writer program "would have provided for [P]laintiff free assistance from skilled

> personnel. It further would have provided [P]laintiff with the assistance he needed for lawsuits he filed and his criminal case." (*Id.*)
>
> Plaintiff was transferred to URF on June 10, 2024. (*Id.*) When he arrived, he received a URF Orientation Guidebook, in which Defendants Atkinson and Benoit were listed as the ADA coordinators. (*Id.*) The guidebook also set forth information regarding the "ADA program under P.D. 04.06.156 and P.D. 06.03.101." (*Id.*)
>
> Plaintiff "continued to request the legal writer program and found out that the MDOC healthcare services must place [his] medical records on file to be process[ed]." (*Id.*) Plaintiff was evaluated by non-party Doctor Maloney on August 13, 2024, and Maloney documented Plaintiff's disability and disfigured right arm. (*Id.*) Plaintiff was accepted into the legal writer program in December of 2024, but he was "unsuccessful in being accepted in the ADA program." (*Id.*) According to Plaintiff, the ADA Coordinators at URF failed to give him "ADA reasonable accommodation request appeal . . . forms." (*Id.*, PageID.11.) Plaintiff also faults the ADA Coordinators for failing to meet with him to "identify reasonable options" to meet his needs, including "prosthetics, medical supplies, devices, medical treatment[,] restrictions on activities[,] and placement in special housing." (*Id.*)
>
> Plaintiff states that it has been difficult to file grievances about the failure to place him in the ADA program because of the lack of documentation regarding his disabilities. (*Id.*) According to Plaintiff, "this is an ongoing issue that remains the same." (*Id.*) Plaintiff does mention using the grievance procedure at URF to attempt to "resolve the problems." (*Id.*)

*Id.*, PageID.68-70.

## II. Motion to Dismiss

The Federal Rules provide that a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Put differently, if plaintiffs do "not

nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining whether a claim has facial plausibility, a court must construe the complaint in the light most favorable to the plaintiff, accept the factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Those factual allegations "must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (internal citations omitted). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.*

Defendant argues that the three-year statute of limitations applies, and claims that predate Nov. 20, 2022, should be dismissed. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). For civil rights suits filed in Michigan under Section 1983, the statute of limitations is three years. *See*

Mich. Comp. Laws § 600.5805(2); *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999) (applying Michigan's three-year limitation period for personal injury claims to prisoner section 1983 actions). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220. The statute of limitations is tolled for the period during which a plaintiff's available state remedies were being exhausted. *Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).

Durr signed his complaint on Nov. 20, 2025. ECF No. 1, PageID.16. Under the benefit of the Mailbox rule, the Court should consider Nov. 20, 2025, as the filing date for the complaint. Plaintiff has not asserted any conduct that could have tolled the limitation period. Accordingly, it is recommended that the Court accept Defendant's argument and determine that any asserted claim that predates Nov. 20, 2022, is barred by the statute of limitations period. As a practical matter, the claim that Defendant Washington violated Plaintiff's ADA and RA rights remains. Dismissing Plaintiff's claims prior to Nov. 20, 2022, effectively does nothing to Plaintiff's remaining ADA and RA claims against Defendant Washington.

**III. Motion for Summary Judgment**

Defendant also moves for summary judgment. Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than

---

1 The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). However, when the exhaustion issue is intertwined with the merits of a claim, the Seventh Amendment requires a jury trial on the exhaustion issue. *Richards v. Perttu*, 605 U.S. 460, 479, 145 S.Ct. 1793, 1807 (2025).

for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).

To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers

are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737). And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective Oct. 21, 2024) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W.

If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶¶ W, CC. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ CC. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ Y (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ JJ. The respondent at Step II is designated by the policy. *Id.* at ¶ LL.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ NN. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ OO.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established

that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is

> to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).

Durr filed grievance URF-24-11-2485-28E, asserting at Step I that MDOC Healthcare failed to document his right arm disability and that he has not been accepted in the ADA program, despite being accepted into the legal writer program. ECF No. 15-5, PageID.181. The incident date of the grievance was Aug. 13, 2024, and Durr wrote the grievance on Nov. 7, 2024. *Id.* The grievance was rejected as untimely. *Id.*, PageID.182. The rejection was upheld at Step II and Step III. *Id.*, PageID.178, 180. Thus, Durr's grievance was not reviewed on the merits because it was rejected. Durr makes the conclusory argument that he was thwarted from filing a grievance, but he sets forth no facts that could support his argument. Accordingly, in the opinion of the undersigned, there are no genuine issues of material fact as to whether Durr properly exhausted his administrative remedies for his claims against Director Washington – he did not. However, that does not end the Court's analysis because, as Defendant points out, the grievance procedure is not the relevant procedure when pursuing an ADA claim against the MDOC. ECF No. 15, PageID.122-123.

An inmate must first request a reasonable accommodation by submitting an "Offender ADA Reasonable Accommodation Request/Appeal Form" to the ADA Coordinator for review and processing. Policy Directive 04.06.155 ¶ O. The ADA Coordinator conducts interviews and investigates the inmate's request for

accommodation. ¶ Q. The ADA Coordinator makes the final determination on the reasonable accommodation request and follows up "with the Warden of the inmate's facility to ensure that any approved reasonable accommodation(s) is provided to the prisoner." ¶ R. An inmate may appeal the decision within 30 business days by sending an Appeal Form "through the Worksite offender ADA Coordinator to the Statewide Offender ADA Coordinator. ¶ S.

At the time Durr filed his complaint, on Nov. 20, 2025, he had not made a request to the ADA Coordinator for a reasonable accommodation due to his alleged disability. Durr attached to his response brief an MDOC memorandum dated April 8, 2026, which indicated that his request for "ADA Accommodation" would be forwarded to the Statewide Coordinator for review. ECF No. 17-1, PageID.269. He attached his request, which is dated Mar. 29, 2026 – more than four months after he filed his Complaint. ECF No. 17-1, PageID.270-271. Therefore, in the opinion of the undersigned, Durr's complaint against Defendant Washington should be dismissed because at the time he filed his complaint, he had not made an appropriate request for a reasonable accommodation in accordance with MDOC policy. Moreover, Durr has not shown that his request was denied, and, if it was, that he appealed the denial.

In the opinion of the undersigned, no genuine issue of material fact exists, entitling Defendant Washington to summary judgment. In other words, Durr's complaint is premature. He must first obtain a denial of his ADA request under the MDOC policy and then receive a decision on his appeal of that denial before he files a lawsuit.

## V. Recommendation

The undersigned respectfully recommends that this Court grant Defendant's motion to dismiss and for summary judgment and dismiss this case without prejudice. If Durr obtains a denial of his ADA request under the MDOC policy and then receives a decision on his appeal of that denial, then he may refile this lawsuit.

Dated: October 22, 2026

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).